JMK:PWB
F.#2014R00419

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**14⬛1064**

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

PATRICK MULLINGS,

Defendant.

- - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT_____

(T. 18, U.S.C. § 1344)

EASTERN DISTRICT OF NEW YORK, SS:

KURT J. DIRKER, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and

acting as such.

In or about and between October 2007 and December 2008, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant PATRICK MULLINGS, together with others, did knowingly and intentionally

execute and attempt to execute, a scheme and artifice to defraud a financial institution and

obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and

under the custody and control of, a financial institution, by means of false and fraudulent

pretenses, representations, or promises.

(Title 18, United States Code, Section 1344)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am currently a Special Agent with the FBI, and I have served in this capacity since July 2011.  I am assigned to a white collar crime squad in the FBI's New York field office.  My duties include the enforcement of federal laws involving, among other things, bank fraud, wire fraud, and mail fraud.

2.     As a Special Agent with the FBI, I have received training in conducting white collar crime investigations, as well as additional specific training on mortgage fraud investigations.  In addition, I have conducted and participated in several investigations involving the defrauding of financial institutions.

3.     Through my training, education, and experience, which includes (a) debriefing cooperating witnesses concerning violations of federal bank, wire and mail fraud laws; (b) reviewing financial records that reflect the structuring of deposits and withdrawals; (c) conducting surveillance of individuals engaged in the violation of federal laws; and (d) executing search warrants on suspect premises, I have become familiar with the manner in which individuals conduct and attempt to conduct fraudulent schemes, including, but not limited to, fraudulent schemes involving the procurement of mortgages through false statements.

4.     I have personally participated in this investigation and have witnessed some of the facts and circumstances described herein.  In addition, I have received

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

information from other federal law enforcement officials.  I also have reviewed documents

obtained during the course of the investigation.  The statements contained in this affidavit are

based on my own observations and review of documents, or reliable information provided to

me by other law enforcement personnel.

I.       BACKGROUND

5.       The FBI, along with the Federal Housing Finance Authority, Office of

Inspector General ("FHFA-OIG"), the Federal Deposit Insurance Corporation, Office of

Inspector General ("FDIC-OIG"), the U.S. Department of Housing and Urban Development,

Office of Inspector General ("HUD-OIG"), and the New York State Department of Financial

Services ("NYDFS"), is conducting an investigation into the activities of the defendant

PATRICK MULLINGS and others for engaging in a fraudulent scheme whereby the

defendant and others made false statements on mortgage applications and other loan

documents to induce lenders to issue loans that the defendant used to enrich himself and

others.

6.       The investigation has focused on multiple loans that involve the

defendant PATRICK MULLINGS that are believed to be fraudulently obtained, including,

but not limited to, a January 2008 loan issued by Wells Fargo Bank, N.A. ("Wells Fargo")[2]

to a third party borrower ("Straw Buyer # 1") for the purchase of a home at 502 Marion

Street, Brooklyn, New York (the "Marion Street Property").

---

[2]       A representative of the Federal Deposit Insurance Corporation ("FDIC") confirmed
that, during the relevant time period, the deposits of Wells Fargo were insured by the FDIC.

7.     During the investigation, law enforcement agents have interviewed Straw Buyer # 1 on several occasions.[3] As described in detail below, during the interviews with law enforcement agents, Straw Buyer # 1 stated, in sum and substance and in part, that the defendant PATRICK MULLINGS paid Straw Buyer # 1 to use Straw Buyer # 1's name and other personal identifying information to obtain a loan to purchase the Marion Street Property. Thus far, Straw Buyer # 1's information has proven to be reliable, and Straw Buyer # 1's statements have been corroborated in a number of ways, including through the documents and records associated with the Marion Street Property that are set forth and discussed in detail below.

8.     During the investigation, law enforcement agents have also reviewed numerous records associated with the Marion Street Property, including deeds and other documents recorded with the New York City Department of Finance, Office of the City Register (the "Register"). In addition, law enforcement agents have reviewed numerous records related to the January 2008 Wells Fargo loan to Straw Buyer # 1, including the loan application and supporting documentation. Finally, law enforcement agents have reviewed bank statements and other financial records.

## II.     SALE OF THE MARION STREET PROPERTY TO STRAW BUYER # 1

9.     A recorded deed and related documents obtained from the Register indicate that on or about October 19, 2007, Joon Asset Management Corporation ("Joon Asset") purchased the Marion Street Property from another individual ("Seller # 1") for $350,000. The defendant PATRICK MULLINGS signed the deed and multiple supporting

---

[3]     Straw Buyer # 1 is cooperating with the government in the hopes of obtaining a non-prosecution agreement or a more favorable sentence.

documents for this transaction, and the defendant stated in the documents that he was the "President" of Joon Asset.

10.    A second recorded deed and related documents obtained from the Register indicate that on or about January 10, 2008, Joon Asset allegedly sold the Marion Street Property to Straw Buyer # 1 for $740,000 – i.e., $390,000 more than the amount for which Joon Asset had purchased the Marion Street Property approximately three months earlier. As he had done for the October 2007 transaction, the defendant PATRICK MULLINGS signed various documents for this transaction on behalf of Joon Asset.

11.    During interviews with law enforcement agents, Straw Buyer # 1 stated, in sum and substance and in part, that, prior to late 2007, Straw Buyer # 1 was a casual acquaintance of the defendant PATRICK MULLINGS. At some point in late 2007, the defendant approached Straw Buyer # 1 and asked if Straw Buyer # 1 was interested in helping the defendant purchase and "flip" the Marion Street Property. The defendant explained to Straw Buyer # 1 that he would acquire the Marion Street Property in Straw Buyer # 1's name and using Straw Buyer # 1's credit, and then the defendant would sell the Marion Street Property for a profit. The defendant offered to pay Straw Buyer # 1 $10,000 to use Straw Buyer # 1's name and credit to purchase the Marion Street Property. Straw Buyer # 1 agreed to allow the defendant to purchase the Marion Street Property in Straw Buyer # 1's name. When Straw Buyer # 1 asked the defendant how Straw Buyer # 1 could qualify for a loan large enough to purchase the Marion Street Property, the defendant stated that Straw Buyer # 1 would qualify for the loan because Straw Buyer # 1 had good credit.

12.    The defendant PATRICK MULLINGS did not tell Straw Buyer # 1 that Joon Asset – a company the defendant owned or controlled – already owned the Marion

Street Property. Instead, Straw Buyer # 1 believed that he/she was purchasing the Marion Street Property from Seller # 1.

13.     Straw Buyer # 1 also stated that, prior to applying for a loan in Straw Buyer # 1's name to purchase the Marion Street Property, the defendant PATRICK MULLINGS transferred money into Straw Buyer # 1's Bank of America bank account. The defendant explained to Straw Buyer # 1 that he transferred the money so that it would appear that Straw Buyer # 1 had enough assets to qualify for the loan.[4]

14.     I have reviewed Straw Buyer # 1's Bank of America bank account statements. Based on my review of these records, I have determined that there were multiple transfers of money – with each transfer totaling in the tens of thousands of dollars – between Straw Buyer # 1's Bank of America account and accounts controlled by the defendant PATRICK MULLINGS in the lead-up to the alleged sale of the Marion Street Property.

15.     Straw Buyer # 1 also stated that the defendant PATRICK MULLINGS handled the application submitted to Wells Fargo on behalf of Straw Buyer # 1 for the loan to purchase the Marion Street Property (the "Wells Fargo loan"). Straw Buyer # 1 further stated that he/she knew that false information was included in the loan application that was provided to Wells Fargo, and, furthermore, the defendant knew that false information was included in the loan application.

---

[4]     The defendant transferred money into and out of Straw Buyer # 1's bank account on multiple occasions. Ultimately, the defendant left approximately $10,000 in Straw Buyer # 1's bank account that he did not transfer back to his own accounts. Straw Buyer # 1 stated that this money was the payment for his/her participation in the transaction involving the Marion Street Property.

16.   I reviewed the Wells Fargo loan file for the loan to Straw Buyer # 1.[5] The loan file for the loan to Straw Buyer # 1 contains, among other things, a Uniform Residential Loan Application ("URLA"), which is a standard application form that lenders generally require borrowers to complete and sign.  The URLA contains information about the borrower's employment, income, and assets.

17.   I have reviewed the URLA for the Wells Fargo loan with Straw Buyer # 1.  Straw Buyer # 1 confirmed that he/she signed the URLA on or about January 10, 2008. Straw Buyer # 1 further confirmed that the URLA contained numerous false statements that both he/she and the defendant PATRICK MULLINGS knew were false at the time that the application was submitted to Wells Fargo.  For example, the URLA falsely stated that Straw Buyer # 1 was employed by National Business Credit Services in Brooklyn, New York and that Straw Buyer # 1 had a gross monthly income of $10,250.  The URLA further falsely stated that Straw Buyer # 1 intended to live in the Marion Street Property as his/her primary residence, when, in fact, Straw Buyer # 1 did not intend to live in the Marion Street Property and believed that the defendant would be selling the house for a profit.

18.   The loan file for the Wells Fargo loan also contains a U.S. Department of Housing and Urban Development Settlement Statement ("HUD-1"), which is a form that is provided to the lender that contains a record of all of the funds that will be used to

---

[5]   Based on my training and experience, I know that lenders generally maintain loan files in connection with the loans that they issue.  These files generally include all of the documentation associated with the loan, including, but not limited to, the loan application, supporting documents, correspondence with the borrower, transaction records, and other records of payment by the borrower.

purchase a property, as well as a record of how the proceeds of the sale will be distributed after the closing of a particular transaction.

19.     I have reviewed the HUD-1 for the purchase of the Marion Street Property by Straw Buyer # 1. Straw Buyer # 1 stated that he/she did not prepare the HUD-1 for the Wells Fargo loan. The HUD-1 lists a closing date of January 10, 2008. Straw Buyer # 1 is listed as the "borrower" on the HUD-1, but Joon Asset is not listed as the seller. Instead, Seller # 1 – i.e., the individual who allegedly sold the Marion Street Property to Joon Asset in October 2007 – is listed as the seller. As such, the HUD-1 for the transaction does not match the documents that were recorded with the Register because the HUD-1 contains no reference to the prior sale of the Marion Street Property to Joon Asset. The HUD-1 further states that the listed seller (Seller # 1) was supposed to receive $725,098.64 in connection with the sale of the Marion Street Property. Neither the defendant nor Joon Asset are listed anywhere on the HUD-1, and there is no indication that either the defendant or Joon Asset would receive any of the sale proceeds.

20.     On or about January 9, 2008, Wells Fargo issued a mortgage loan to Straw Buyer # 1 in connection with the alleged purchase of the Marion Street Property.

21.     On or about January 9, 2008, Wells Fargo wired $601,293.08 into the attorney trust account of the settlement agent for the sale of the Marion Street Property to Straw Buyer # 1.

22.     I have reviewed bank records for the settlement agent's attorney trust bank account at Citibank. These records reveal that, on or about January 11, 2008, the settlement agent issued multiple checks that reference the sale of the Marion Street Property to Straw Buyer # 1. As such, it is my belief that these checks represent the disbursement of

the loan proceeds that were deposited into the settlement agent's account two days earlier. Among the checks issued from the settlement agent's account on or about January 11, 2008 that reference the alleged sale of the Marion Street Property to Straw Buyer # 1 are the following:

        a.      A check in the amount of $50,250 made out to the defendant PATRICK MULLINGS;

        b.      A check in the amount of $10,000 made out to Joon Asset; and

        c.      A check in the amount of $465,791.54 made out to Stingray Capital, LLC ("Stingray").[6]

      23.      According to the HUD-1 associated with the Wells Fargo loan, none of the payees listed in paragraphs 22(a) – 22(c) were supposed to receive any of the proceeds of the Wells Fargo loan.

      24.      Records obtained from Sovereign Bank for an account in the name of the defendant PATRICK MULLINGS reveal that, on or about February 15, 2008, the above-referenced $50,250 check was deposited into the defendant's bank account.

      25.      Additional records obtained from Sovereign Bank reveal that, on or about January 14, 2008, the above-referenced $465,791.54 check was deposited into a Stingray bank account.

---

[6]      Stingray appears to be operated and controlled by the defendant PATRICK MULLINGS. In or about January 2007, the defendant opened a bank account at Sovereign Bank in the name of Stingray. The only signatories on the Stingray account are the defendant and a woman who, based on the investigation, is believed to be the defendant's wife. Furthermore, the address associated with the Stingray account is an address where, based on recent utility bills, the defendant is believed to reside. In addition, corporate records for Stingray obtained from the New York Department of State, Division of Corporations list the same contact address that is listed on the Stingray bank account.

26.    Further, records obtained from T.D. Bank reveal that, on or about January 14, 2008, the above-referenced $10,000 check was deposited into a bank account in the name of Joon Asset.[7]

27.    As such, in connection with the Wells Fargo loan, approximately $526,000 of the loan proceeds were deposited into accounts controlled by the defendant PATRICK MULLINGS. According to the HUD-1 and other documents submitted to Wells Fargo in support of Straw Buyer # 1's loan application, however, the defendant, Joon Asset, and Stingray were not supposed to receive any of the proceeds of the loan.

28.    Both before and after Wells Fargo issued the loan to Straw Buyer # 1, the defendant PATRICK MULLINGS told Straw Buyer # 1 that he would pay the mortgage on the Marion Street Property until the house could be resold. Straw Buyer # 1 never made a mortgage payment nor was he/she asked to make a mortgage payment by the defendant.

29.    Straw Buyer # 1 further stated that he/she believed that the defendant PATRICK MULLINGS was making the mortgage payments on the Marion Street Property until in or about August or September 2012, when he/she was contacted by law enforcement agents regarding this investigation.

30.    Based on my review of the records in the loan file, on or about August 15, 2013, Wells Fargo initiated foreclosure proceedings against Straw Buyer # 1 with respect to the Wells Fargo loan and the Marion Street Property.

---

[7]    The signatories on the Joon Asset T.D. Bank account are the defendant PATRICK MULLINGS and the woman who is believed to be the defendant's wife.

III.   SUBSEQUENT SALE OF THE MARION STREET PROPERTY

31.    A recorded deed and related documents obtained from the Register indicate that on or about September 10, 2008 Joon Asset sold the Marion Street Property to a different third party buyer ("Buyer # 2") for approximately $700,000.  The defendant PATRICK MULLINGS signed various recorded documents for this transaction on behalf of Joon Asset.  Further, despite the fact that Joon Asset had already sold the Marion Street Property to Straw Buyer # 1 in January 2008 (as discussed above), there is no reference to the sale of the Marion Street Property to Straw Buyer # 1 in any of the documents associated with sale of the Marion Street Property in September 2008 by Joon Asset to Buyer # 2.

32.    On or about September 10, 2008, Golden First Mortgage Corporation ("Golden First") issued a $687,487 mortgage loan to Buyer # 2 in connection with the purchase of the Marion Street Property.

33.    I have reviewed the Golden First loan file for the loan to Buyer # 2. The HUD-1 for the purchase of the Marion Street Property by Buyer # 2 lists a closing date of September 10, 2008.  Buyer # 2 is listed as the "borrower" on the HUD-1, and Joon Asset is listed as the "seller."  There is no reference in the HUD-1 to the January 2008 sale of the Marion Street Property to Straw Buyer # 1.

34.    On or about September 11, 2008, Golden First wired approximately $687,487 into the bank account of the settlement agent for the loan to Buyer # 2.  Later that day, the settlement agent issued a check in the amount of $609,763.87 to Stingray, which was deposited into Stingray's Sovereign Bank account on or about September 11, 2008. Accordingly, in connection with the loan issued to Buyer # 2 to purchase the Marion Street

Property, over $600,000 of the proceeds were deposited into an account controlled by the defendant PATRICK MULLINGS.

35.     In sum, it appears that the defendant PATRICK MULLINGS – through his company, Joon Asset – sold the Marion Street Property twice – first to Straw Buyer # 1 in January 2008 for approximately $740,000 and then again to Buyer # 2 in September 2008 for approximately $700,000. Furthermore, it appears that the defendant was aware of and involved in these transactions because, in both transactions, he signed documents on behalf of Joon Asset. Finally, in connection with these two transactions, mortgage loan proceeds totaling approximately $1,135,805.41 were deposited into accounts controlled by the defendant.

IV.     CONCLUSION

36.     Based on the facts set forth in this affidavit, there is probable cause to believe that the defendant PATRICK MULLINGS, together with others, did knowingly and intentionally execute and attempt to execute, a scheme and artifice to defraud a financial institution and obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1344.

37.     It is respectfully requested that this Court issue and order sealing, until further order of the Court, all papers submitted in support of this application, including the application, the arrest warrant, and the complaint. I believe that sealing these documents is necessary because the defendant is currently at liberty. Thus, the government seeks to seal the complaint and arrest warrant to ensure that the defendant does not learn that a complaint

has been filed and an arrest warrant has been issued, and to prevent him from fleeing justice and avoiding arrest and prosecution.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued, and that the defendant PATRICK MULLINGS be dealt with according to law.

KURT J. DIRKER
Special Agent
Federal Bureau of Investigation

Sworn to me before this
15th day of December, 2014

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK